# United States Court of Appeals for the Federal Circuit

2009-5008

LYMAN F. BUSH individually and as
Personal Representative of the Estate
of  BEVERLY J. BUSH,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee.

-------------------------------------------------------------

2009-5009

TOMMY J. SHELTON,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.


Thomas E. Redding, Redding & Associates, P.C., of Houston, Texas, argued for all plaintiffs-appellants.  With him on the brief were Sallie W. Gladney and Teresa J. Womack.

Andrew M. Weiner, Attorney, Appellate Section, Tax Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee.  With him on the brief were John A. DiCicco, Acting Deputy Assistant Attorney General, and Michael J. Haungs, Attorney.

Appealed from:  United States Court of Federal Claims

Judge George W. Miller

# United States Court of Appeals for the Federal Circuit

2009-5008


LYMAN F. BUSH, individually and as
Personal Representative of the Estate
of BEVERLY J. BUSH,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee.


Appeal from the United States Court of Federal Claims in consolidated case nos. 02-CV-1041 and 04-CV-1598, Judge George W. Miller.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

2009-5009

TOMMY J. SHELTON,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.


Appeal from the United States Court of Federal Claims in consolidated case nos. 02-CV-1042 and 04-CV-1595, Judge George W. Miller.

_____

DECIDED: March 31, 2010

_____

Before LINN, DYK, and PROST, <u>Circuit Judges</u>.

Opinion for the court filed by <u>Circuit Judge</u> DYK.  Opinion concurring in the result filed by <u>Circuit Judge</u> PROST.

These two tax refund suits claim that the Internal Revenue Service ("IRS") failed to issue deficiency notices as required by law, thus rendering the tax assessments made against the plaintiff-taxpayers invalid.  The Court of Federal Claims dismissed taxpayers' claims, holding that no notice of deficiency was required.  While we agree with the taxpayers that deficiency notices were required, we conclude that the taxpayers have failed to establish that the failure to send the required notices was harmful error.  We therefore affirm.

BACKGROUND

I

This case presents two questions.  These are whether the IRS was required to issue deficiency notices to the taxpayers before making tax assessments, and whether, if such notices were required, the taxpayers in a refund suit can escape liability for taxes admittedly owed on the ground that the IRS failed to issue the required deficiency notices.  Some background is essential to an understanding of these issues.

Under the Internal Revenue Code ("IRC"), when the IRS determines that a taxpayer has underpaid income taxes, it makes a deficiency determination.  I.R.C. § 6212(a).  In general, a deficiency is the amount by which the tax imposed under the Code exceeds the amount the taxpayer paid.  <u>See</u> <u>id.</u> § 6211(a).  After determining a deficiency, the IRS may proceed to collect the tax, first making a deficiency assessment, <u>id.</u> §§ 6201, 6213(c), and then issuing a "notice and demand letter," specifying the amount due and demanding payment.  <u>See</u> <u>id.</u> § 6303.  If the taxpayers do not pay after demand, an automatic lien arises in favor of the United States upon all

of the taxpayer's property which continues until the time that the lien is either satisfied or extinguished. Id. §§ 6321-6322. Once the IRS has made a demand for payment, it has several options at its disposal to collect the unpaid tax, including levying on any property belonging to the taxpayer and satisfying the deficiency out of the sale of such property, id. §§ 6331, 6335, or instituting a civil action to enforce the lien, id. § 7403. In most circumstances, the IRS is prohibited from proceeding to assess and collect income taxes without first issuing a deficiency notice to the taxpayer that gives the taxpayer the option to either pay the tax (and sue for a refund in either the Court of Federal Claims or a federal district court pursuant to 28 U.S.C. § 1346(a)(1)) or challenge the IRS' deficiency determination in the Tax Court under I.R.C. § 6213(a).

If the taxpayer elects to challenge the deficiency assessment in the Tax Court, assessment and collection are stayed pending the outcome of the Tax Court proceedings. Id. § 6213(a).[1] Thus, the receipt of the deficiency notice allows the taxpayer to litigate the lawfulness of the tax in a prepayment forum, before the Commissioner of Internal Revenue ("Commissioner") initiates assessment and collection proceedings. See, e.g., Comm'r v. Shapiro, 424 U.S. 614, 616-17 (1976).

---

[1] That section provides: "[If a petition has been filed with the Tax Court] . . . no assessment of a deficiency in respect of any tax imposed by subtitle A, or B, chapter 41, 42, 43, or 44 and no levy or proceeding in court for its collection shall be made, begun, or prosecuted . . . until the decision of the Tax Court has become final."

The question of whether a notice of deficiency is required becomes more complicated when the taxpayer's liability relates to his participation in a partnership.[2] Partnerships are pass-through entities that do not themselves pay federal income tax. Olson v. United States, 172 F.3d 1311, 1316 (Fed. Cir. 1999). For most partnerships, when a dispute arises, the Code has established a procedure for determining the tax consequences of partnership activities and other partnership-wide issues in a partnership-level proceeding that is binding on all members of the partnership. See Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. No. 97-248, 96 Stat. 324 (codified at I.R.C. §§ 6221-6233) ("TEFRA"). After the partnership items are determined in the administrative proceeding before the IRS, the IRS issues a Final Partnership Administrative Adjustment ("FPAA") to the Tax Matters Partner ("TMP") and to each individual partner. See I.R.C. §§ 6223(a), (d)(2). Within ninety days after the date on which the notice of FPAA is mailed to the TMP, the TMP may file a petition for a readjustment of the partnership items in the Tax Court, the district court in which the partnership's principal place of business is located, or the Court of Federal Claims. Id. § 6226(a)(1)-(3). Individual partners can opt out of the proceedings by settling with the IRS. Id. § 6224(c). After the conclusion of the judicial proceedings, the IRS can then

---

[2]    A partnership files an annual information return reporting items of income, deduction, and credit.  I.R.C. § 6031; Treas. Reg. §§ 1.701-1, 1.6031(a)-1(a)(1). Individual partners then report their distributive shares of a partnership's income and deductions on their personal tax returns. See I.R.C. §§ 701-704. Partnership items are those items "required to be taken into account for the partnership's taxable year," and any other items that the Treasury Secretary has deemed "more appropriately determined at the partnership level than at the partner level." Id. § 6231(a)(3); see Treas. Reg. § 301.6231(a)(3)-1(a). A nonpartnership item is defined as "an item which is (or is treated as) not a partnership item." I.R.C. § 6231(a)(4).

assess individual partners with respect to the tax attributable to their distributive shares of the adjusted partnership items.  See id. §§ 6225(a), 6230(a)(1), 6231(a)(6).

In general, a notice of deficiency is not required if the liability issue leading to the deficiency notice has already been resolved in the partnership-level proceeding.  See id. § 6230(a)(1).  The statute provides:

> (a) Coordination with deficiency proceedings.—
>> (1) In general.—Except as provided in paragraph (2) or (3), subchapter B [deficiency notice requirement] of this chapter shall not apply to the assessment or collection of any computational adjustment.
>> (2) Deficiency proceedings to apply in certain cases.—
>>> (A) Subchapter B shall apply to any deficiency attributable to—
>>>> (i)    affected items which require partner level determinations (other than penalties, additions to tax, and additional amounts that relate to adjustments to partnership items) . . . .

Id. § 6230(a) (emphasis added).  A "computational adjustment," is defined as "the change in the tax liability of a partner which properly reflects the treatment . . . of a partnership item."  See id. § 6231(a)(6).  An "affected item" is defined as "any item to the extent that such item is affected by a partnership item."  Id. § 6231(a)(5).

Both parties agree that the obligation to provide notice here depends on the resolution of two separate issues.  First, the parties agree that a deficiency notice is required if the tax deficiency calculation by the IRS does not involve a "computational adjustment," which is defined as a "change in the tax liability of a partner which properly reflects the treatment under this subchapter of a partnership item."  Id. § 6231(a)(6).  Second, they agree that, even if a computational adjustment is involved, notice is required if the deficiency is attributable to "affected items which require partner level determinations."  Id. § 6230(a)(2)(A)(i).  However, the parties differ as to whether the

deficiency assessed here involves a "computational adjustment," and whether the deficiency involved "affected items which require [a] partner-level determination[ ]."

## II

With this background in mind, we turn to the facts of these two individual cases at issue here. These cases are among thirty tax refund suits brought by partners of the various Greenberg Brothers Partnerships. In case number 2009-5008, Bush v. United States, taxpayer Bush was a limited partner in two Greenberg Brothers Partnerships: the Lone Wolf McQuade ("LWM") and Cinema 84 partnerships. Bush v. United States, 78 Fed. Cl. 76, 77 (2007). Bush filed a joint return with his wife; the taxpayers were thus both husband and wife. In 1991, the IRS issued Notices of Final Partnership Administrative Adjustment for tax years 1983, 1984, 1985, and 1986 tax years to the TMP of LWM, disallowing certain deductions reported on the LWM partnership's 1983-1986 returns. The IRS then issued FPAAs for Cinema 84's 1985-1989 tax years, disallowing certain deductions reported on the partnership returns for those tax years.

The partnership disagreed, and a partnership-level proceeding resulted. The TMP filed petitions on behalf of LWM and Cinema 84 in the Tax Court on October 7, 1991, and January 8, 1992, respectively, challenging the IRS' proposed adjustments for each partnership. On August 7, 1999, while the partnership proceedings were pending in the Tax Court, the Bushes and the IRS entered into two separate Form 906 Closing

Agreements on Final Determination Covering Specific Matters ("Closing Agreements").[3]

The Closing Agreements resolved both partnership-level and individual partner-level

issues. As to partnership-level issues, the parties agreed that no adjustment was

---

[3]    The Closing Agreements provided in relevant part:

1. No adjustment to the partnership items shall be made for the taxable years 1983 through 1995 [for LWM; for Cinema '84, 1984-1995] for purposes of this settlement.
2. The taxpayers are entitled to claim their distributive share of the partnership losses for 1983 through 1995 [for LWM; for Cinema '84, 1984-1995] only to the extent they are at risk under I.R.C. § 465.
3. The taxpayers' amount at risk for 1983 through 1986 [for LWM; for Cinema '84, 1984-1989] is their capital contribution to the partnership.
4. The taxpayers' capital contribution to the partnership is $50,000.
5. Taxpayers' qualified investment for computing investment tax credit is the amount at risk as set forth in paragraph # 4.
6. The taxpayers are not at risk under I.R.C. § 465 for any partnership notes, entered into by the partnership to acquire rights in [motion pictures], whether or not assumed by the taxpayers. Any losses disallowed under this agreement are suspended under I.R.C. § 465. Such suspended losses may be used to offset the taxpayers' pro rata share of any income earned by the partnership and/or other income in accordance with the operation of I.R.C. § 465.
7. To the extent the taxpayers make additional cash contributions to the capital of the partnership after 1986 [for LWM; for Cinema '84, 1989], the taxpayers' amount at risk will be increased in accordance with I.R.C. § 465.
8. To the extent the partnership earns net income the taxpayers' at risk will be increased in accordance with I.R.C. § 465.
9. To the extent the taxpayers make cash payments on the partnership notes after the date of execution of this agreement by the Commissioner and the taxpayers, the taxpayers' amount at risk will be increased in accordance with I.R.C. § 465.
. . . .
15. Any refund claim attributable to the operation of this agreement shall be deemed to be timely filed and shall be allowed if it is filed with the IRS within one year of the execution of this agreement by the Commissioner of Internal Revenue. Any refund claim so submitted pursuant to this paragraph within 120 days after the execution of this agreement on behalf of the Commissioner of Internal Revenue shall be allowed as an offset pursuant to I.R.C. §§ 6402(a) and 6601(f) against any tax deficiencies resulting from this agreement.

required to the items reported in the partnership returns. The agreement also addressed partner-level issues concerning partner at risk capital contribution.[4] The partners' at risk capital was not finally fixed by the settlement agreements. The agreements provided that the "at risk" capital would consist of $50,000 per partner (representing the original capital contribution) and would be adjusted upward in future years if the partnership earned taxable income or the partners made additional cash contributions to the partnership, including cash contributions in the form of payments on partnership notes. The agreement also did not waive the right to receive deficiency notices. As a result of the settlement, the Tax Court dismissed the Bushes from the partnership proceedings.

In July of 2000, the IRS issued Notices of Adjustment showing adjustments to taxpayers' returns for 1985, 1986, and 1987 tax years. Subsequently, the IRS made the following deficiency assessments in accordance with the Notices of Adjustment: (1) $16,708.00 in tax and $42,660.44 in interest for 1985, (2) $10,817.00 in tax and $46,004.97 in interest for 1986, and (3) $9,635.00 in tax and $26,729.62 in interest for 1987. These deficiency assessments were calculated based on paragraphs 4, 5, and 6 of the Closing Agreements, and the IRS' determination of the Bushes' at risk capital amounts for those years. The IRS did not issue any notices of deficiency prior to making these assessments. In August of 2000, taxpayers paid the assessed tax and

---

[4] Section 465 limits the deductibility of losses from certain "passive" activities (such as holding, producing, or distributing motion pictures, see I.R.C. § 465(c)(1)(A)), to the amount a taxpayer is considered "at risk" at the close of the taxable year. Id. § 465. A taxpayer is generally considered to be at risk with respect to amounts borrowed to the extent that the taxpayer is personally liable for the repayment of such amounts. Id. § 465(b)(2)(A). A taxpayer is not at risk, however, "with respect to amounts protected against loss through nonrecourse financing, guarantees, stop loss agreements, or other similar arrangements." Id. § 465(b)(4).

interest for the 1985-1987 tax years. The IRS did not initiate any collection proceedings against taxpayers.

In July of 2002, taxpayers filed refund claims with the IRS for the assessed tax and interest, and when the IRS denied these refund claims, taxpayers filed a refund suit in the Court of Federal Claims. In their motion for partial summary judgment on liability, taxpayers argued that the IRS was obligated to issue notices of deficiency before making any post-settlement assessments for tax years 1985, 1986, and 1987. Bush, 78 Fed. Cl. at 79. The failure to issue the deficiency notices, according to the taxpayers, meant that the assessments were unlawful, and that taxpayers were entitled to a refund. Id. The government filed a cross-motion for summary judgment, contending that the IRS was not required to issue notices of deficiency because the assessments were "computational adjustments" exempt from deficiency procedures under I.R.C. § 6230(a)(1). See id. at 80.

The Court of Federal Claims denied taxpayers' partial motion for summary judgment and granted the government's cross-motion for summary judgment. Id. at 86. While its reasoning is not entirely clear, the Court of Federal Claims appeared to hold that the assessments were "computational adjustments" because they could be calculated based solely on the Closing Agreements and taxpayers' individual returns. Because taxpayers' at risk amounts were stipulated via the Closing Agreements, the Closing Agreements allowed the IRS to determine the at risk amounts "with no other information than what could be found in the relevant tax returns." Id. at 84. In other words, the Closing Agreements made the determination of taxpayers' at risk amounts "simply computational." Id. at 85.

The facts in <u>Shelton v. United States</u>, case number 2009-5009, are almost identical to the facts in the Bushes' case. Shelton was a limited partner in Cinema 84. Shelton filed income tax returns for 1981, 1985-1987, 1989, 1992 and 1995, claiming deductions arising from his partnership investment. In 1991, the IRS issued a FPAA, disallowing deductions reported on tax returns from 1984-1989. While the partnership-level suit was pending in the Tax Court, Shelton and the IRS executed a Form 906 Closing Agreement almost identical to the Bushes' Closing Agreement.[5] Based on the Closing Agreement, the IRS issued notices of adjustment, showing adjustments it made to Shelton's allowed losses in the 1981 and 1984-1995 tax years and assessing additional amounts due for those years. After paying these new assessments and being denied a refund by the IRS, Shelton filed suit in the Court of Federal Claims, alleging that the assessments made in tax years 1981, 1985-1987, 1989, 1992, and 1995 were invalid due to the IRS' failure to issue notices of deficiency for the tax years before making the assessments. <u>See</u> <u>Shelton v. United States</u>, Nos. 02-1042T, 04-1595T, slip op. at 6 (Fed. Cl. Aug. 17, 2007) (consolidated). The Court of Federal Claims granted the government's motion for summary judgment, incorporating the reasoning in <u>Bush</u>.[6] <u>Id.</u> at 6-7.

---

[5]     The sole differences between the two cases appear to be the tax years at issue and the amount of the capital contribution to the partnership, which in the case of Shelton is $150,000.

[6]     Both Shelton and the Bushes also raised additional offset claims in the proceedings below for additional tax years that are not raised in this appeal. The Court of Federal Claims held that the IRS properly denied the offsets. <u>Bush v. United States</u>, 84 Fed. Cl. 90 (2008); <u>Shelton v. United States</u>, Nos. 02-1042T, 04-1595T, 2008 WL 4346134, at *2 (Fed. Cl. Sept. 23, 2008).

Taxpayers timely appealed. At oral argument, we requested supplemental briefing concerning the scope of I.R.C. § 6330, which provides for Collection Due Process ("CDP") hearings, and the question of whether this particular procedural route to the Tax Court would have been available to taxpayers in this case.

We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

DISCUSSION

I

Taxpayers first argue that deficiency notices were required because the at risk capital amount under section 465 of the Code required a "partner level determination." See I.R.C. § 6230(a)(2)(A)(i). This deficiency notice provision is designed to require a notice when the deficiency requires a further individualized determination applicable to the particular partner.[7] The government responds that no partner-level factual determinations were necessary, because determining the taxpayers' amounts at risk involved the simple application of the provisions of the relevant Closing Agreement. We need not resolve this issue, however, because we conclude that the IRS was required to issue a notice of deficiency because the assessments did not meet the definition of "computational adjustment[s]" under section 6231(a)(6).

The taxpayers argue that the assessments were not computational adjustments because there were, by express agreement, no changes to the partnership items, and therefore, there could not have been any "change in tax [] liability . . . which properly

---

[7] See, e.g., Roberts v. Comm'r, 94 T.C. 853, 861 (1990) (holding that a partner's at risk amount under I.R.C. § 465 required partner-level factual determinations where side agreements with third parties materially affected the amounts petitioners had at risk in each partnership); N.C.F. Energy Partners v. Comm'r, 89 T.C. 741, 745 (1987) (holding that question of whether or not a partner's underpayment was due to negligence, thus meriting an addition to tax, required a partner-level determination).

reflects the treatment under . . . subchapter [C] of a partnership item." Appellant Bush's Br. 28. In rejecting taxpayers' argument, the Court of Federal Claims appeared to hold that because no additional information was needed to arrive at the Bushes' tax liability other than that contained in the Closing Agreement and the partner-level returns, no partner-level factual determinations were necessary and the assessments could be made through computational adjustments. Bush, 78 Fed. Cl. at 83 (citing Olson v. United States, 172 F.3d 1311, 1317 (Fed. Cir. 1999)). We believe that this interpretation of the statute contradicts both its purpose and its plain text.

The statute requires a deficiency notice if the partner's individual tax assessment is involved, and if that assessment does not follow from the partnership-level determination of partnership items. Such individual calculations have not been determined in the partnership-level proceeding, and the individual taxpayer is thus entitled to notice. Here, it is clear that taxpayers' assessments were not the result of a computational adjustment, i.e., "the change in the tax liability of a partner which properly reflects the treatment . . . of a partnership item," I.R.C. § 6231(a)(6), that typically results from a TEFRA proceeding. While at risk capital can be a "partnership item" determined in a TEFRA proceeding, see Treas. Reg. § 301.6231(a)(3)-1(a)(1)(vi)(C), no such determination or adjustment to a partners' at risk capital was made in the settlement. The settlement specifically stated that there was no change in "partnership items" as a result of the settlement. There was only a change in a partner-level item, namely, the imposition of a $50,000 cap on the at risk capital of each partner in each partnership.

The reference to "treatment" of a partnership item here is to the "change" in treatment resulting from a TEFRA proceeding or settlement. See I.R.C. § 6231(a)(6).

Judge Prost's opinion suggests that the use of the word "treatment" in section 6231(a)(6) suggests somehow that the "change in the tax liability" need not be the result of a change in the treatment of a partnership item in the TEFRA proceedings. See id. This simply makes no sense. The reference to "treatment" in section 6231(a)(6) is a reference to treatment determined in the TEFRA proceeding. The purpose of a TEFRA proceeding is to determine whether a partnership item should be treated differently than the partnership treated the item in the partnership return, i.e. the purpose of the TEFRA proceeding is to determine whether a change in tax treatment is warranted. See I.R.C. § 6221 ("[T]he tax treatment of any partnership item (and the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item) shall be determined at the partnership level."). If such a change in treatment is determined in the TEFRA proceeding, that change may bring about a "change in the tax liability" that constitutes a computational adjustment pursuant to section 6231(a)(6). But there is no basis for divorcing the issue of treatment from the result of the TEFRA proceeding (or a settlement of the proceeding). As section 6231(a)(6) makes clear, the computational adjustment is an "adjustment[] required to apply the results of a proceeding with respect to a partnership" (referring specifically to the consequences for indirect partners).

As the taxpayers correctly assert, there were no changes to their partnership items by virtue of Paragraph 1 of the Closing Agreements: "No adjustment to the partnership items shall be made for the taxable years 1983 through 1995 . . . for purposes of this settlement." Thus, there could not have been a change in tax liability to "properly reflect[] the treatment . . . of a partnership item." See I.R.C. § 6231(a)(6). The

assessments were not computational adjustments, and the IRS was required to issue a notice of deficiency prior to making its assessment of tax.

The government argues that the determinations of taxpayers' at risk amounts were computational adjustments requiring no notice of deficiency because "the IRS merely had to apply the terms of the Closing Agreements to [the Bushes' and Shelton's tax returns] through a computation." Appellee's Br. 30 (in 2009-5008). The government urges that so long as no individual partner-level factual determination is required, there is a computational adjustment. But this is not what the statute says—a computational adjustment exists only if the partner's individual liability changes to "properly reflect[] the treatment . . . of a partnership item." See I.R.C. § 6231(a)(6). The government at oral argument was wholly unable to explain what partnership-level adjustment affected the at risk determination. The government simply conflates the two provisions of the statute—"partner-level determinations" and "computational adjustment."

The government argues that our decision in Olson v. United States holds otherwise. 172 F.3d 1311. We cannot agree. In that case, Olson and his wife entered into a settlement agreement with the IRS regarding his investment in a partnership. The settlement agreement determined the tax treatment of certain partnership items, including the disallowance of an investment tax credit at the partnership level. This investment credit had been claimed in the taxpayer's individual return. The investment tax credits at issue in that case were concededly partnership items that were required to be determined at the partnership level. Id. at 1318. Thus, the determination of the individual partner's distributive share of the disallowed investment tax credits was a

"change in . . . tax liability . . . which properly reflects the treatment . . . of a partnership item." See I.R.C. § 6231(a)(6).

The government next argues that the applicable regulation on computational adjustments, Temp. Treas. Reg. § 301.6231(a)(6)-1T(a), demonstrates that no notice of deficiency was required here. 52 Fed. Reg. 6779, 6790-91 (Mar. 5, 1987). The government cites language in section (a) of the regulation, which provides that "changes in a partner's tax liability with respect to affected items that do not require partner-level determinations . . . are included in a computational adjustment." Appellee's Br. 37 (in 2009-5009) (quoting Temp. Treas. Reg. § 301.6231(a)(6)-1T(a)). However, we find this language unhelpful to the government. Nothing in the quoted sentence suggests that <u>all</u> affected items that do not require partner-level determinations are exempt from the deficiency proceedings, regardless of whether the assessment arises from a "change in the tax liability of a partner which properly reflects the treatment . . . of a partnership item." See I.R.C. § 6231(a)(6). Moreover, other parts of the regulation appear to

support taxpayers' interpretation of the statute.[8]  We do not believe the regulation can be interpreted to have adopted the position taken by the government.  Indeed, the government would lose even if the regulation favored the government because the statutory language is quite clear.  The regulation cannot override the clear command of the statute.  See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43 (1984) (holding that where the language of a statute is clear, resort to the agency's interpretation is improper).

Because the assessments did not meet the definition of "computational adjustment[s]" under section 6231(a)(6), the IRS was required to issue a notice of deficiency.[9]

---

[8]    For example, Temp. Treas. Reg. §301.6231(a)(6)-1T(a) provides in part:

> A change in the tax liability of a partner to properly reflect the treatment of a partnership item under subchapter C of chapter 63 of the Code is made through a computational adjustment.  A computational adjustment may include a change in tax liability that reflects a change in an affected item where that change is necessary to properly reflect the treatment of a partnership item.  However, if a change in a partner's tax liability cannot be made without making one or more partner-level determinations, that portion of the change in tax liability attributable to the partner-level determinations shall be made under the provisions of subchapter B of chapter 63 of the Code (relating to deficiency procedures).

(emphases added).

[9]    Judge Prost's opinion curiously suggests that the majority "decides that a taxpayer who enters a settlement agreement with the Internal Revenue Service ("IRS") nonetheless has an unrestricted right to challenge issues resolved by that agreement again, in Tax Court."  Concurring Op. at 2.  Nothing in the majority opinion suggests that the taxpayer has the right to relitigate issues resolved by the settlement.

II

Although we conclude that notices of deficiency were required in this case, the parties differ as to whether the failure to give notice here was prejudicial. The government argues that the failure to provide notice was not prejudicial. The taxpayers argue that the failure was prejudicial because it deprived them of a ticket to the Tax Court—that is, the opportunity to litigate their tax liability in the Tax Court. We conclude that taxpayers are not entitled to the remedy they seek (i.e., a refund of taxes paid for the tax years in question) because the IRS' failure to issue a notice of deficiency constituted harmless error under the circumstances of this case.[10]

Although there is no constitutional right to a prepayment forum, see Reich v. Collins, 513 U.S. 106, 111 (1994); Phillips v. Comm'r, 283 U.S. 589, 595 (1931), the I.R.C. has traditionally made such a forum available, as the Supreme Court recognized in Laing v. United States. 423 U.S. 161 (1976). The primary purpose of the deficiency notice provision is to prevent the IRS from initiating collection proceedings before the taxpayer has received a deficiency notice, and has had the opportunity to contest the assessment in the Tax Court. We have no doubt that in general the initiation of collection proceedings in the absence of a required deficiency notice is both unauthorized and wrongful. Where a proper deficiency notice has not been sent, the

---

[10]     While the government did not use the words "harmless error," this is the essence of the government's "no prejudice" argument. In a number of places throughout its brief, the government argues that even if it should have issued a notice of deficiency, such error resulted in no prejudice. See, e.g., Appellee's Br. 35 n.5 (in 2009-5008) ("Bush was not 'prejudiced' by not receiving notices of deficiency because, as explained below, he could not have disputed the assessments, even if he had been allowed to do so in Tax Court"); id. at 44 ("With no possible partnership-level or partner-level items for the Tax Court to consider, a notice of deficiency would be nothing more than a 'ticket' to a procedural Potemkin village.").

Supreme Court and our sister circuits have uniformly held that on a proper showing injunctive relief is available to prevent the IRS from initiating assessment or collection procedures.[11] If the tax has been collected utilizing statutory collection procedures, the courts have allowed taxpayers to secure repayment of amounts collected.[12] Indeed, these protections are explicit in the statute. The statute prohibits a "levy or proceeding in court for . . . collection" until a deficiency notice has been mailed and the time for petitioning the Tax Court for review has expired. I.R.C. § 6213(a). The statute also provides:

> Notwithstanding the provisions of section 7421(a), the making of such assessment or the beginning of such proceeding or levy during the time such prohibition is in force <u>may be enjoined</u> by a proceeding in the proper court, including the Tax Court, and <u>a refund may be ordered by such court of any amount collected within the period during which the Secretary is prohibited from collecting by levy or through a proceeding in court under the provisions of this subsection</u>.

---

[11]    See, e.g., <u>Shapiro</u>, 424 U.S. at 616-17 ("[I]f the Internal Revenue Service does attempt to collect the tax by levy or otherwise, before such exhaustion of remedies in violation of § 6213, the collection is not protected by the Anti-Injunction Act and may be restrained by a United States district court . . . ."); <u>Guthrie v. Sawyer</u>, 970 F.2d 733, 736 (10th Cir. 1992) ("[T]he statutory exception to the Anti-Injunction Act provided by I.R.C. § 6213(a) specifically authorizes an injunction prohibiting an assessment or levy when the taxpayer has not received a deficiency notice."); <u>Keado v. Comm'r</u>, 853 F.2d 1209, 1214 (5th Cir. 1988) (denying injunction requested by taxpayer where evidence was sufficient to establish as a matter of law that the IRS mailed taxpayer the requisite deficiency notices); <u>Cool Fuel, Inc. v. Connett</u>, 685 F.2d 309, 313 (9th Cir. 1982) (recognizing the exception to the Anti-Injunction Act carved out by I.R.C. § 6213 where taxpayer did not receive a notice of deficiency before assessment).

[12]    See <u>Singleton v. United States</u>, 128 F.3d 833, 837 (4th Cir. 1997) (holding invalid collection of tax due absent issuance of a statutory notice of deficiency); <u>Philadelphia & Reading Corp. v. United States</u>, 944 F.2d 1063, 1069-70, 1076 (3d Cir. 1991) (granting a refund for taxes paid as well as overpayments where IRS illegally collected taxes by levy without issuing the requisite notice of deficiency).

I.R.C. § 6213(a) (emphases added).  The injunctive provision is longstanding, dating to the Revenue Act of 1926, ch. 27, 44 Stat. 9.  The refund provision was added in 1998 as part of the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. No. 105-206, § 3464, 112 Stat. 685, 767 (codified at I.R.C. § 6213(a)).  Significantly, the statute expresses concern with "collection" during the period that "collecting by levy or through a proceeding in court" is prohibited.  The statute does not broadly provide for a refund of amounts paid by the taxpayer after assessment or provide for a refund where the taxpayer voluntarily pays the assessment before collection proceedings are initiated.

This case, however, presents just such a situation.  The IRS did not issue a demand for payment (which is a predicate to collection, see I.R.C. § 6303) or initiate collection proceedings.  The taxpayers do not seek to prevent the IRS from collecting the tax, nor do they seek repayment of funds improperly collected.  Rather, the taxpayers paid the assessments and then sued for a refund, alleging that they are entitled to a refund simply because the IRS failed to issue the requisite notice, without regard to whether the tax was in fact owed, and without any showing that the taxpayers were prejudiced by litigating the tax issue in the refund proceedings rather than in the Tax Court.  Nothing in the language of the statute confers such a refund right on the taxpayer, and the failure in the statute to provide for a refund under such circumstances strongly suggests that no such automatic refund was intended.

Under such circumstances, the question becomes whether the failure to provide the required notice before assessment was harmless error.  The harmless error rule, as embodied in the federal harmless error statute, 28 U.S.C. § 2111, applies.  See 28 U.S.C. § 2111 ("[T]he court shall give judgment after an examination of the record

without regard to errors or defects which do not affect the substantial rights of the parties.")[13]  The Supreme Court has recently made clear that 28 U.S.C. § 2111 is applicable to all judicial review proceedings involving claims of administrative error, and that the same harmless error standard applies to both administrative errors and errors that occur as a result of the judicial proceedings themselves.[14]

Courts have held that an agency's failure to act, resulting in some procedural error, is subject to a prejudicial or harmless error test.  See, e.g., All Indian Pueblo Council v. United States, 975 F.2d 1437, 1443 (10th Cir. 1992) (holding that agency's failure to grant plaintiffs' appeal on jurisdictional grounds did not prejudice plaintiff where all legal issues raised by the administrative appeal had been considered and decided on the merits by the district court).  Significantly, several of our sister circuits have applied the rule of prejudicial error to the specific situation of the IRS' failure to comply with the statutory notice requirements.  See, e.g., Elings v. Comm'r, 324 F.3d 1110, 1112 (9th Cir. 2003) (IRS' failure to include date to file Tax Court petition does not invalidate deficiency notice where petitioner filed a timely petition); Smith v. Comm'r, 275 F.3d 912, 916 (10th Cir. 2001) (same); Cook v. United States, 104 F.3d 886, 889-90 (6th Cir. 1997) (IRS' failure to timely notify the investigation targets of the issuance of a related

---

[13]    The judicial review provision of the Administrative Procedure Act ("APA") also includes a harmless error rule.  See 5 U.S.C. § 706 ("due account shall be taken of the rule of prejudicial error").

[14]    See Nat'l Ass'n of Home Builders v. Defenders of Wildlife, 551 U.S. 644, 659-60 (2007) ("In administrative law, as in federal civil and criminal litigation, there is a harmless error rule[.]") (citation omitted); see also Shinseki v. Sanders, 129 S. Ct. 1696, 1704 (2009) ("We have no indication of any relevant distinction between the manner in which reviewing courts treat civil and administrative cases.  Consequently, we assess the lawfulness of the Federal Circuit's approach in light of our general case law governing application of the harmless-error standard.").

third-party summons in accordance with statute was excused where no prejudice resulted from the delay). Thus, we conclude that the principle of prejudicial error is appropriately applied to the IRS' failure to issue a notice of deficiency where no collection proceedings had been initiated.

Under the general harmless error standard, where a party's "substantial rights" are not affected by an error, the error must be considered harmless. See 28 U.S.C. § 2111; Fed. R. Civ. P. 61. Here, taxpayers have failed to meet this burden of showing that their substantial rights were affected because they were denied access to the Tax Court to raise their offset claims. A failure to follow appropriate procedures only has significance if the use of an incorrect procedure could affect the outcome. Even in the context of a right to a jury trial, the denial of a jury trial has been held to be harmless error if the outcome could not have been affected—i.e., if the court concludes that no reasonable jury could have reached a contrary conclusion.[15] It is difficult to see why the right to resort to the Tax Court for a determination of tax liability should be afforded greater sanctity than the right to a jury trial in a civil case.

Here, taxpayers do not allege that there were any issues that they were unable to litigate in the context of the refund suit that they would have been able to litigate in a Tax Court suit for the redetermination of a deficiency. Here also there has been no

---

[15] See, e.g., Cal. Scents v. Surco Prods, Inc., 406 F.3d 1102, 1109 (9th Cir. 2005) ("The denial [of a jury trial] will be harmless only if no reasonable jury could have found for the losing party . . . .") (quotation omitted); Rego v. ARC Water Treatment Co. of Pa., 181 F.3d 396, 401 (3d Cir. 1999) (denial of jury trial was harmless because a judgment as a matter of law for appellee would have been warranted); Gupton v. Va., 14 F.3d 203, 206 n.5 (4th Cir. 1994) (denial of jury trial was harmless where district court properly could have granted judgment as a matter of law); Freeman Contractors, Inc. v. Cent. Surety & Ins. Corp., 205 F.2d 607, 612 (8th Cir. 1953) ("[T]he erroneous denial of a jury trial is not prejudicial error where under all the evidence there is no issue of fact to submit to a jury.").

2009-5008, -5009                    21

showing that litigating the issues in question in the Tax Court as opposed to the Court of Federal Claims could have resulted in a different outcome. The one issue that the taxpayers sought to litigate was their claim that the government had failed to properly apply the provisions of the Closing Agreements in later years (thus resulting in an overpayment of tax and partial offset to the tax liability for the years in question). These claims were rejected. See Bush v. United States, 84 Fed. Cl. 90 (2008); Shelton v. United States, Nos. 02-1042T, 04-1595T, 2008 WL 4346134, at *2 (Fed. Cl. Sept. 23, 2008). The taxpayers do not claim that litigating this issue in the Tax Court could have made a difference. Under such circumstances, taxpayers have failed to establish that the error was harmful.

Taxpayers, however, argue that the Fourth Circuit in Singleton v. United States, 128 F.3d 833 (4th Cir. 1997), reached a different result. The court stated that the deficiency notice "serves as a jurisdictional prerequisite for a taxpayer to challenge an assessment in Tax Court. . . . Because this notice was never sent, [petitioners] were deprived of their opportunity to contest the tax due," id. at 839, and that taxpayers were entitled to a refund. However, in Singleton, unlike in this case, the IRS had already initiated collection proceedings, having made a demand for immediate payment and having proceeded to impose a lien on the taxpayer's assets. See id. at 834. After the decision in Singleton, Congress acted both to clarify that the right to a refund as a matter of course only exists where collection proceedings were wrongly initiated, and to provide an additional Tax Court remedy to those who did not receive the requisite deficiency notice. See Internal Revenue Service Restructuring and Reform Act of 1998,

Pub. L. No. 105-206, § 3401, 112 Stat. 685, 746 (codified at I.R.C. ch. 64) ("Taxpayer Bill of Rights Act").

Under the Taxpayer Bill of Rights Act, if the IRS fails to provide the required deficiency notice, a taxpayer can contest the appropriateness of an IRS collection action in the Tax Court. The taxpayer begins with an appeal from an IRS Appeals Officer in a CDP hearing. See I.R.C. § 6330(d)(1). In the CDP hearing, the taxpayer may raise appropriate spousal defenses, challenge the appropriateness of collection actions, offer collection alternatives, and "raise . . . challenges to the existence or amount of the underlying tax liability for any tax period <u>if the person did not receive any statutory notice of deficiency for such tax liability</u> or did not otherwise have an opportunity to dispute such tax liability." I.R.C. § 6330(c) (emphasis added). Thus, although it may have been the case that a notice of deficiency was once a "jurisdictional prerequisite" to a taxpayer's suit in the Tax Court for a redetermination of his tax liability, <u>Laing</u>, 423 U.S. at 165 n.4, it appears that after the passage of section 6330, there is an alternate route to the Tax Court.[16]

We conclude that the IRS' failure to issue deficiency notices was harmless error in the circumstances of this case, and that the taxpayers are not entitled to a refund. However, it is essential to make clear the limited nature of our holding. The IRS continues to have an obligation to issue a notice of deficiency where the statutes provide for such notice, and the taxpayer has tools at his disposal to resist illegal

---

[16] See <u>Prince v. Comm'r</u>, 133 T.C. 12 (2009) (reviewing IRS determination as to underlying tax liability in a section 6330 proceeding de novo, because of the failure to send deficiency notice); <u>Manko v. Comm'r</u>, 126 T.C. 195, 204 (2006) (holding in the context of a section 6330 proceeding that the IRS had improperly failed to issue a deficiency notice and barring collection of the tax).

collection or to seek a refund of pursuant to the statute if amounts are improperly collected. What the taxpayer may not do is forgo his right to resist collection, voluntarily pay the tax, and then secure a refund of tax admittedly owed without showing prejudice.

<u>AFFIRMED</u>

COSTS

No Costs.

# United States Court of Appeals for the Federal Circuit

2009-5008

LYMAN F. BUSH individually and as
Personal Representatives of the Estate
of BEVERLY J. BUSH,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of Federal Claims in consolidated case nos. 02-CV-1041 and 04-CV-1598, Judge George W. Miller.

--------------------

2009-5009

TOMMY J. SHELTON

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of Federal Claims in consolidated case nos. 02-CV-1042 and 04-CV-1595, Judge George W. Miller.

PROST, <u>Circuit Judge</u>, concurring in the result.

With respect, I concur only in the result.

On its face, this case is abstract and unapproachable; few people have ever looked at subchapter K of the tax code, let alone familiarized themselves with terms like "notice of deficiency," "computational adjustment," or the difference between

"partnership items" and "nonpartnership items." I write separately to emphasize the importance of the issues at play and ramifications of the majority opinion. Ultimately, the majority and I reach the same result. However, I do so by simply applying the statute; in my view, the statute is clear, in need of no interpretive gloss or embellishment. I would thus adopt the logic and careful reasoning of the U.S. Court of Federal Claims. The majority, by contrast, reaches the right result by misreading the statute, then creating a new harmless error "exception" <u>never raised or advocated by anyone</u>. What the majority decides has implications far beyond the outcome here.[1] Particularly in tax law, it is unwise and even perilous to craft a new rule that will likely affect future cases in unpredictable ways. For these reasons, I concur only in the result.

This case is about a taxpayer's right to know what taxes the government says he owes, but which the taxpayer has not paid and may not know are owed. The majority decides that a taxpayer who enters a settlement agreement with the Internal Revenue Service ("IRS") nonetheless has an unrestricted right to challenge issues resolved by that agreement again, in Tax Court.

In addition to allowing a taxpayer to selectively relitigate (and potentially invalidate) portions of a settlement he dislikes, the majority creates a harmless error

---

[1] From the statement of related cases, we already know that these are test cases, and that the majority's decision will immediately affect the approximately thirty tax refund actions brought by partners of related partnerships, which were stayed pending the outcome of this appeal. Of course, these are not the only cases where the question will turn on the definition of "computational adjustment." Nor is it likely the government will decline to avail itself of the majority's new harmless error rule, by arguing that other errors the IRS commits are harmless.

exception.[2] This exception is broad and sweeping. It applies whenever the IRS fails to give a taxpayer notice that he owes more taxes. In practice, the majority's new rule means the IRS no longer has to honor a taxpayer's statutorily-guaranteed right to notice or follow the tax code's detailed notice procedures. See I.R.C. § 6212. Instead, the IRS is free to assess and collect the allegedly due taxes. See id. §§ 6201, 6203, 6212-6213. This new rule conflicts with the conclusions of our circuit and every other circuit to have considered the issue. See Olson, 172 F.3d at 1317 ("Under the non-partnership 'standard' deficiency procedures of the Code, the IRS may not assess additional tax without first mailing a notice of deficiency to a taxpayer whose taxes have not been paid in full." (emphasis added)). Our sister circuits have read these provisions as creating a categorical, nonnegotiable notice requirement, denial of which can never be harmless.[3]

---

[2] Despite the majority's protestations to the contrary, under its view of the statute and without the newly minted harmless error rule, Bush and Shelton would be able to raise issues resolved by the settlement agreement in Tax Court. Maj. Op. at 16, n.9. The majority thus undermines the finality of IRS settlement agreements, the goal of the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA") to streamline partnership proceedings, and this court's decision in Olson v. United States, 172 F.3d 1311 (Fed. Cir. 1999), which all bar such repetitive litigation. See I.R.C. §§ 6222, 6224; Olson, 172 F.3d at 1318.

[3] See, e.g., United States v. Frontone, 383 F.3d 656, 658 (7th Cir. 2004) ("The Internal Revenue Service is forbidden, with immaterial exceptions, to assess a deficiency until it has issued the taxpayer a notice of deficiency."); Clark v. United States, 63 F.3d 83, 84 n.1 (1st Cir. 1995); Phila. & Reading Corp. v. United States, 944 F.2d 1063, 1072 (3d Cir. 1991) ("An assessment of taxes that is not preceded by the statutorily required notice of deficiency or a validly executed and accepted waiver of notice of deficiency is illegal, and we so hold."); see also Ulrich v. Comm'r, 585 F.3d 1235, 1236-37 (9th Cir. 2009); Pagonis v. United States, 575 F.3d 809, 813 (8th Cir. 2009); Keado v. United States, 853 F.2d 1209, 1211-12 (5th Cir. 1988); Hoyle v. Comm'r, 131 T.C. No. 13, 2008 WL 5156596, at *6 (2008) (holding that if an assessment "was not preceded by a notice of deficiency as required by section 6213(a), the assessment is invalid," meaning no lien could have arisen and the collection was illegal).

2009-5008, -5009                    3

Thus, while we all agree on the ultimate result in this case, I take strong issue with the path the majority takes to get there. First, I disagree with the majority's construction of "computational adjustment" in I.R.C. § 6230 and § 6231 because it reads these sections to unambiguously contain an additional requirement—change in a partnership item—contrary to the statutes' plain language, as well as common sense. Second, I object to the majority's treatment of binding circuit precedent, namely, this court's decision in <u>Olson v. United States</u>, 172 F.3d 1311 (Fed. Cir. 1999). The majority interprets the same statutory phrase at issue in <u>Olson</u> but reaches a far different, conflicting construction. Substantively, I believe <u>Olson</u> is correct and the majority is wrong. Pragmatically, I doubt these opinions can coexist: they leave this court and future litigants the impossible task of reconciling decisions that reach contrary results on nearly identical facts. The majority's gossamer distinction from <u>Olson</u> dazzles only at a distance; scrutiny reveals it to overlook the heart of the (conflicting) analysis and result.

Finally, I strenuously object to the majority's creation of a new, sweeping harmless error rule. This is a rule no party sought or supported—not even the government, its beneficiary.[4] More importantly, the rule is legally unsound and practically harmful. The majority derives its new rule from 28 U.S.C. § 2111. There is little reason to think, however, that this "general" harmless error rule trumps the more specific provisions of the tax code, which creates no such exception and arguably forecloses the majority's approach. In effect, the majority's new harmless error rule

---

[4] The majority concedes that the government never used the words "harmless error" or argued that the harmless error rule in 28 U.S.C. § 2111 applied. Maj. Op. at 17 n.10. Perhaps that is why the majority resorts to extracting a harmless error "essence" from isolated sentences in the government's brief.

largely nullifies one of the most basic, important protections a taxpayer has against the government: the right to notice. This right is not simply a procedural formality; it is how a taxpayer knows the IRS is planning to collect taxes. I.R.C. §§ 6211-6213. A "notice of deficiency" tells the taxpayer how much he owes and why the IRS thinks he owes it. Id.; see also Abrams v. Comm'r, 814 F.2d 1356, 1357 (9th Cir. 1987). Under the majority's new harmless error rule, the IRS can proceed with collection without telling the taxpayer what it plans to do. Because receiving this notice is a prerequisite for filing suit in Tax Court, the majority's rule also deprives taxpayers of the only pre-payment, pre-assessment forum in which to challenge the IRS. See I.R.C. § 6213(a); Laing v. United States, 423 U.S. 161, 165 n.4 ("A deficiency notice is of import primarily because it is a jurisdictional prerequisite to a taxpayer's suit in the Tax Court . . . ."); see also Desmet v. Comm'r, 581 F.3d 297, 302-03 (6th Cir. 2009); Abrams, 814 F.2d at 1357; Gaska v. Comm'r, 800 F.2d 633, 635 (6th Cir. 1986). Whether a taxpayer has to pay the taxes allegedly owed before getting to challenge whether he owes anything may not matter if the amount is small, but may matter a great deal if the sum is large or the taxpayer poor. Even if some errors in a notice of deficiency may be subject to harmless error analysis under § 2111, it is hard to see how the error alleged here—failure to issue any notice—can ever be harmless.

These concerns are discussed in more detail below.

## I. THE STATUTE

My first disagreement is with the majority's construction of "computational adjustment" in I.R.C. § 6230. In my view, the Court of Federal Claims got it right.

Section 6230 specifies when the IRS must issue a notice of deficiency to the taxpayer before assessing and collecting taxes. I.R.C. §§ 6213(a), 6230. It also states when the IRS is <u>not</u> required to issue a notice of deficiency. For our purposes, the relevant exception is for "computational adjustments." If the taxes the IRS seeks to assess are "computational adjustments," the IRS may assess and collect the taxes without issuing a notice of deficiency. <u>Id.</u> § 6230(a)(1). The tax code defines computational adjustment as "the <u>change in the tax liability</u> of a partner <u>which properly reflects the treatment</u> under this subchapter [C] of a partnership item." I.R.C. § 6231(a)(6) (emphasis added).

I would affirm the Court of Federal Claims' careful, well-reasoned construction of "computational adjustment." <u>See</u> <u>Bush v. United States</u>, 78 Fed. Cl. 76, 81-84 (2007). I would hold that a computational adjustment includes any (1) change in a partner's tax liability (2) which correctly applies subchapter C (3) to a partnership item. I.R.C. § 6231(a)(6); <u>see also</u> 26 C.F.R. § 301.6231(a)(6)-1T. That is what § 6231(a)(6) says, and I see no reason to depart from it.

Based on this construction, I would further hold that the changes in the tax liability of Bush and Shelton were computational adjustments because the changes reflected how Bush and Shelton had to report certain partnership losses (a partnership item) on their returns. <u>See</u> 26 C.F.R. § 301.6231(a)(3)-1 (defining "partnership item"). This change in how partnership losses should be reported, or "treat[ed]," resulted from the taxpayers' settlement agreements with the IRS. Because no additional fact finding was required to compute their tax liability, I agree with the Court of Federal Claims that a notice of deficiency was not required, meaning the tax assessments were valid. In

2009-5008, -5009                              6

holding that the taxpayers were thus not entitled to a tax refund, I would rely on what the statute says, not on a new harmless error exception, as the majority does.

The majority reads the definition of computational adjustment to mean that only "change[s] . . . [to] a partnership item" are computational adjustments. Maj. Op. at 13-14 ("[T]here were no <u>changes to their partnership items</u> . . . [thus, t]he assessments were <u>not computational adjustments</u> . . . ." (emphases added)).[5]  I part ways with the majority because that is not what the statute says.  Grammatically, the majority is correct that "of a partnership item" could modify "change" in § 6231(a)(6), but context suggests this interpretation makes little sense.  A rule of grammar is that subordinate clauses "should be placed near the words they modify."  Margaret Shertzer, <u>The Elements of Grammar</u> 47 (1986).  Similarly, a principle of statutory construction is that "[r]eferential and qualifying phrases, where no contrary intention appears, refer <u>solely</u> to the last antecedent."  2A Norman J. Singer & Shambie Singer, <u>Sutherland Statutes and Statutory Construction</u> § 47.33 (7th ed. 2009).  That is why we say, "Flying over Washington, I saw the Lincoln Memorial," not "I saw the Lincoln Memorial flying over Washington."

The definition of "computational adjustment" is certainly not the model of clarity.  To blame are the numerous qualifying phrases—"in the tax liability," "of a partner,"

---

<sup>5</sup>    The majority suggests that our disagreement is about the <u>circumstances</u> in which "changes in the tax liability" under I.R.C. § 6230 and § 6231 must occur.  Maj. Op. at 13 ("Judge Prost's opinion suggests that . . . the 'change in tax liability' need not be the result of a change . . . in the TEFRA proceedings [or settlement].")  This assertion is incorrect.  I agree with the majority that such determinations must occur during a proceeding or settlement under TEFRA.  <u>See</u> I.R.C. §§ 6224, 6231; <u>see also</u> <u>Olson</u>, 172 F.3d at 1317.  The real disagreement is about what the word "change" refers to in the definition of computational adjustment.  <u>See</u> I.R.C. § 6231(a)(6).

"which properly reflects the treatment," "under this subchapter," and "of a partnership item." I.R.C. § 6231(a)(6). The challenge is to determine which phrase belongs to what. When the above guidelines are applied to § 6231(a)(6), they suggest the "change" is to "the tax liability of a partner," not in a "partnership item." Tellingly, the phrase "partnership item" appears nowhere near the word "change"; it is part of a phrase qualifying something else entirely, "treatment."

It is the dependent clause, "which properly reflects the treatment under this subchapter of a partnership item," that requires the change (in tax liability) to accord with how partnership items are "treat[ed]" under subchapter C. See I.R.C. §§ 6221 (requiring the "tax treatment of any partnership item" to be determined "at the partnership level"), 6229, 6231; see also Keener v. United States, 551 F.3d 1358, 1364 (Fed. Cir. 2009) (noting that subchapter C, "Tax Treatment of Partnership Items," contains rules for "dealing with" partnership items).

Requiring the proper "treatment" of a partnership item, as the statute says, is not the same thing as requiring a "change" in the value of a partnership item, as the majority holds. Maj. Op. at 13-14. There are many instances where a TEFRA proceeding or settlement may not change the value of partnership items, such as the partnership's income or loss. As occurred here, however, the TEFRA proceeding or settlement may affect how an individual partner reports, or "treats," partnership items on his individual return, resulting in a change in tax liability. In this case, the partner's individual, at-risk amounts affected how much of the partnership losses Bush and Shelton could claim on their returns. The amount of the partnership item, here partnership losses, remained

the same; what changed was how those losses were "treated" (reported) on Bush's and Shelton's individual returns, resulting in a corresponding change to their tax liability.

Disregarding what the statute says, the majority limits the meaning of "treatment" by equating it to "change." But that is not the word Congress chose.[6] The word "treatment" is broad, but understandably so, given that the tax code performs an enormous, mixed bag of functions—from categorizing items as "income" or "loss," to determining whether an item warrants a tax credit, deduction, or additional tax. It is thus not surprising that Congress has used "treatment" often, but not because it really meant "change." See, e.g., I.R.C. §§ 1361-1379 (subchapter S, "Tax Treatment of S Corporations and Their Shareholders"), 4462, 6211-6234 (subchapter C, "Tax Treatment of Partnership Items"). Here, there is no evidence that Congress intended the phrase "treatment under this subchapter of a partnership item" to mean less than its naturally broad and inclusive meaning. Cf. Reiter v. Sonotone Corp., 442 U.S. 330, 338-39 (1979). This court has consistently construed "treatment" in tax law broadly, to encompass everything from the procedures for calculating income or loss, to the criteria for deciding whether a company is subject to double or single taxation.[7]

---

[6] There is no question Congress could have used "change" instead of "treatment," had the intention been to limit computational adjustments to "changes" in partnership items. See Kucana v. Holder, ___ S. Ct. ___, 2010 WL 173368, at *9 (Jan. 20, 2010); Nken v. Holder, 129 S. Ct. 1749, 1758 (2009); Carcieri v. Salazar, 129 S. Ct. 1058, 1065 (2009); Barnhart v. Sigmon Coal Co., 534 U.S. 438, 452 (2002) ("[W]hen Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (quotation marks omitted)).

[7] See, e.g., Keener, 551 F.3d at 1364; Info. Sys. & Networks Corp. v. United States, 437 F.3d 1173, 1175 (Fed. Cir. 2006) (using "treat" to describe whether S corporations are subject to double or single taxation); The Falconwood Corp. v. United States, 422 F.3d 1339, 1341 (Fed. Cir. 2005) (using "treat" to describe whether a

The majority fails to give proper weight to the words Congress chose, or to the distinction Congress drew by using different words in I.R.C. § 6231(a)(6). Badaracco v. Comm'r, 464 U.S. 386, 398 (1984) ("Courts are not authorized to rewrite a statute because they might deem its effect susceptible of improvement."); Kirkendall v. Dep't of the Army, 479 F.3d 830, 857-58 (Fed. Cir. 2007); see also Sosa v. Alvarez-Machain, 542 U.S. 692, 711 n.9 (2004) ("[W]hen the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended." (quotation marks omitted)); 2A Norman J. Singer & Shambie Singer, Sutherland Statutes and Statutory Construction § 46:6 (7th ed. 2009). Here, there is no reason to think that Congress used "treatment" to mean "change." Russello v. United States, 464 U.S. 16, 23 (1983) ("We would not presume to ascribe this difference [in language between subsections] to a simple mistake in draftsmanship."); see also Barnhart, 534 U.S. at 454. Had Congress intended to limit "computational adjustments" to tax liability changes arising from changes in a partnership item, it could have used "change" again, rather than "treatment." The majority errs by rewriting the definition of "computational adjustment" to include this new limitation.

Neighboring provisions in § 6231 provide similarly strong evidence that "treatment" in § 6231(a)(6)'s definition of computational adjustment does not necessarily

---

corporation elects a certain type of taxation); SKF USA Inc. v. United States, 263 F.3d 1369, 1382 (Fed. Cir. 2001) (using "treatment" to describe how overpayments are dealt with for tax refund purposes); Stone Container Corp. v. United States, 229 F.3d 1345, 1350 (Fed. Cir. 2000) (using "treated" to describe whether a particular tax gives the Court of International Trade jurisdiction); Culley v. United States, 222 F.3d 1331, 1333 (Fed. Cir. 2000) (using "treatment" to describe whether a taxpayer could compute his tax liability under I.R.C. § 1341); Holiday Vill. Shopping Ctr. v. United States, 773 F.2d 276, 279 (Fed. Cir. 1985) (using "treatment" to describe whether a tax is computed by viewing the business as a partnership or aggregate of individuals).

require "change" in a partnership item. Subsection (a)(4) of § 6231 defines "nonpartnership item" as any "item which is (or is <u>treated</u> as) not a partnership item." Subsection (a)(12) of § 6231 provides that "[e]xcept to the extent otherwise provided in the regulations, a husband and wife who have a joint interest in a partnership shall be <u>treated</u> as 1 person." In the context of (a)(4) and (a)(12), it would be nonsensical to read "treated" to mean "changed." The "normal rule" of statutory interpretation is that "identical words used in different parts of the same statute are generally presumed to have the same meaning." <u>IBP, Inc. v. Alvarez</u>, 546 U.S. 21, 34 (2005); <u>see also</u> <u>Nijhawan v. Holder</u>, 129 S. Ct. 2294, 2301 (2009); <u>Sullivan v. Stroop</u>, 496 U.S. 478, 484 (1990). As used in (a)(4) and (a)(12) of § 6231, "treated" is better read to mean how tax liability should be computed under the tax code—further evidence that "computational adjustment" in (a)(6) of § 6231 does not require any change in a partnership item, but only correct application of subchapter C. <u>See</u> <u>Finnegan v. Leu</u>, 456 U.S. 431, 438 & n.9 (1982) (reading "virtually identical language" to have the same meaning); <u>Tunik v. Merit Sys. Prot. Bd.</u>, 407 F.3d 1326, 1347-48 (Fed. Cir. 2005).

## II. <u>OLSON V. UNITED STATES</u>

An independent, though equally compelling, reason why I concur only in the result is the conflict the majority creates with this court's decision in <u>Olson v. United States</u>, 172 F.3d 1311 (Fed. Cir. 1999). Though the majority says otherwise, <u>Olson</u> already considered and decided what constitutes a "computational adjustment" under I.R.C. §§ 6230 and 6231. <u>See</u> Maj. Op. at 14-15; <u>Olson</u>, 172 F.3d at 1317-18.

<u>Olson</u> holds that assessments are "computational adjustments" when they require "no individualized factual determinations" as to the correctness of the original

partnership items or "any other factual matters such as the state of mind of the taxpayer upon filing." 172 F.3d at 1318. Under Olson, when the "critical" questions of fact "ha[ve] already been resolved," then "application of that stipulated fact to the tax returns in question requires only computational action." Id. Facts can be resolved, for example, by a taxpayer's settlement agreement with the IRS, which "concede[s] that they ha[ve] no entitlement" to certain tax credits. Id.

Under Olson, the correct result in this case is exactly the opposite of what the majority reaches. As in Olson, Bush and Shelton entered into settlement agreements with the IRS. These agreements provided that Bush and Shelton could not claim losses from certain investments. The IRS subsequently recomputed the taxes owed by Bush and Shelton. These adjustments to their tax liability were based on the settlement agreements, "entail[ing] nothing more than reviewing the taxpayers' returns for the years in question, striking out the tax credits that had been improperly claimed, and re-summing the remaining figures." Id. Olson holds that applying stipulated facts in this fashion is a prototypical "computational adjustment" under §§ 6230 and 6231. Giving Olson the controlling weight it is due, we should be affirming the Court of Federal Claims' conclusion that the assessments here were "computational adjustments," exempt from the general notice of deficiency requirement.

Instead, the majority claims Olson does not apply because the settlement agreement in Olson concerned partnership items, whereas the settlement agreements in this case do not. Maj. Op. at 14-15. This is a distinction that makes no difference, because the relevant reasoning in Olson is not so limited.

Olson set out the analytical framework for deciding what constitutes a "computational adjustment" whenever there is a settlement agreement, not only when that agreement pertains to particular items. 172 F.3d at 1317-18. The majority's rule undercuts the purpose of TEFRA in exactly the way Olson feared. See id. at 1318. By requiring a notice of deficiency, the majority does the opposite of streamlining partnership proceedings, instead giving the taxpayer an unnecessary, unwise opportunity to attack the taxes assessed. The opportunity is unnecessary because any assessments are based on a settlement the taxpayer signed, which the taxpayer acknowledges may give rise to future tax liabilities. The opportunity is unwise because it allows the taxpayer to selectively attack settlement provisions he dislikes by challenging the resulting assessments. Such attacks are possible because a notice of deficiency allows the taxpayer to go to Tax Court, where he can relitigate the amount of tax owed and the reason he owes it, even when the settlement fully resolves the issue. See I.R.C. §§ 6211-6213.

The decisions of other courts agree with Olson and conflict with the majority. None read § 6231(a)(6) as the majority does, instead defining "computational adjustment" as tax assessments that require no additional factual determinations to determine the individual's tax liability. See, e.g., Desmet, 581 F.3d at 303-04; Callaway v. Comm'r, 231 F.3d 106, 109-10 & n.4 (2d Cir. 2000) (holding that "where no further factual determinations are necessary at the partner level, an assessment attributable to an 'affected item' may also be made by computational adjustment" because determining the change in tax liability "is a mathematical calculation and requires no further factfinding"); see also Bob Hamric Chevrolet, Inc. v. United States, 849 F. Supp. 500,

510 (W.D. Tex. 1994) (holding that "a settlement is usually applied to a partner by means of a computational adjustment and not under the ordinary deficiency and refund procedures"); <u>Harris v. Comm'r</u>, 99 T.C. 121, 126, 1992 WL 176438 (1992); <u>Powell v. Comm'r</u>, 96 T.C. 707, 712, 1991 WL 80646 (1991); <u>N.C.F. Energy Partners v. Comm'r</u>, 89 T.C. 741 (1987) (superseded on other grounds by the Taxpayer Relief Act of 1997, Pub. L. No. 105-34, § 1238(a), 11 Stat. 126).

These decisions reaffirm my conviction that the interpretation of "computational adjustment" in <u>Olson</u> is correct. The majority errs by failing to follow <u>Olson</u> and by creating a distinction with no basis in the statute.

## III. NEW HARMLESS ERROR EXCEPTION

The majority only reaches the right result because it creates a new harmless error exception. This rule was not advocated by either party in this court or below, even though the government stands to benefit from it. The majority holds that even when a notice of deficiency is required under § 6230, the IRS's failure to issue such a notice will be excused if this failure was not "prejudicial." Maj. Op. at 16-17, 20. The majority defines "prejudicial" as an error that could affect the "outcome," meaning it results in an incorrect assessment or collection of taxes. <u>Id.</u> at 21-22.

In my view, the majority errs by inventing a harmless error exception for "procedural" errors by the IRS. Maj. Op. at 20-21. Though the majority may intend its holding to be "limited," I question whether the test can, or will, be limited to the facts of this case. <u>Cf.</u> Maj. Op. at 23. Though the majority does not discuss them, the implications of this new rule are sweeping: So long as the IRS is right that more taxes are owed, it can <u>always</u> bypass the notice of deficiency procedures in I.R.C. §§ 6211-

6216. As a practical matter, taxpayers will rarely, if ever, be able to satisfy the majority's test, which requires showing that litigating in Tax Court "could have resulted in a different outcome" than a refund suit in district court or the Court of Federal Claims. Maj. Op. at 22. Indeed, by design the primary difference between a Tax Court action and a refund suit is whether the taxpayer has to pay the disputed taxes before litigating. Compare I.R.C. §§ 6213, 6512, with I.R.C. §§ 6227, 7422. This is one of the rare cases where the exception may indeed consume the rule, namely the procedures set out in I.R.C. §§ 6211-6216. [8]

More importantly, the majority's exception has no textual basis in the tax code. Though the majority tenuously relies on the general harmless error standard in 28 U.S.C. § 2111,[9] properly applied, § 2111 changes nothing. Maj. Op. at 19-21. It does not change the result here because I.R.C. §§ 6211-6216 make clear that a taxpayer has an unqualified right to a notice of deficiency. Until the IRS issues the taxpayer such a notice, the IRS cannot assess or collect that deficiency. I.R.C. § 6213(a); see also

---

[8] The majority compounds the harm of this new rule by subsequently trying to limit it, decreeing that "[w]hat the taxpayer may not do is forgo his right to resist collection, voluntarily pay the tax, and then secure a refund of tax admittedly owed without showing prejudice," because there is none. Maj. Op. at 24. With this sentence, the majority rewrites the due process protections available to the taxpayer. Unless he is prepared to show prejudice, a taxpayer must now fight collection every step of the way, even if he ultimately shows that the IRS was wrong. The majority cites no authority for its new requirement, which suggests taxpayers may no longer file refund suits unless they previously "resist[ed] collection." This rule ignores the century we live in and what the tax code says. We are no longer colonists opposing the Stamp Act or a tax on tea. Congress gave taxpayers the right to do exactly what the majority now forbids: "voluntarily pay the tax," then sue for a "refund of the tax," without showing prejudice. I.R.C. § 7422.

[9] Section 2111 provides that, "[o]n the hearing of any appeal . . . the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties."

2009-5008, -5009                    15

<u>Frontone</u>, 383 F.3d at 658; <u>Eschweiler v. United States</u>, 946 F.2d 45, 48 (7th Cir. 1991) (noting the IRS's "statutory obligation to send notice of the deficiency").

The majority's mistake is to treat the notice of deficiency as an empty procedural gesture, like using the right size paper or filing enough copies of an appellate brief. <u>See</u> Maj. Op. at 19-22; <u>see, e.g.</u>, Fed. R. App. P. 32; Ninth Cir. R. 32-2. As with most tax laws, here the "substantial right" at stake is the taxpayer's right to have the IRS follow particular procedures before assessing or collecting taxes. <u>See</u> I.R.C. §§ 6212-6213. The majority incorrectly assumes that the IRS's failure to follow the procedures Congress established only matters if that failure could affect the outcome, the tax assessed. Maj. Op. at 17-22. Focusing on whether the outcome (tax assessed) is right or wrong ignores the nature of the right at stake.

Tax laws are technical laws. They are not subject to the general principles of equity as the majority now holds; instead, they require strict adherence to the explicit procedures they establish. <u>See</u> <u>United States v. Dalm</u>, 494 U.S. 596, 608 (1990); <u>Lewyt Corp. v. Comm'r</u>, 349 U.S. 237, 249 (1955); <u>Oropallo v. United States</u>, 994 F.2d 25, 28 n.3 (1st Cir. 1993); <u>In re Graham</u>, 981 F.2d 1135, 1138 (10th Cir. 1992); <u>Ewing v. United States</u>, 914 F.2d 499, 501 (4th Cir. 1990); <u>Richardson v. Smith</u>, 301 F.2d 305, 306 (3d Cir. 1962) (noting that "taxation is a game which must be played strictly in accordance with the rules"). Because the right at issue is partially procedural, much of the "harm" is deprivation of that procedure. <u>Cf.</u> <u>Hughes v. Rowe</u>, 449 U.S. 5, 13 & n.2 (1980); <u>Carey v. Piphus</u>, 435 U.S. 247, 266 (1978) (holding that deprivation of a party's procedural due process rights is actionable, even without injury).

Here, however, the harm is greater than just a loss of procedure because receiving a notice of deficiency is prerequisite to filing in Tax Court. When taxpayers are entitled to a notice of deficiency and receive none, they lose their statutory right to a prepayment, pre-assessment forum (Tax Court) due to the IRS's error, thus depriving them of a substantial right. <u>See</u> I.R.C. § 6213(a). The majority misses the point by framing the issue as whether "there were any issues that [the taxpayers] were unable to litigate in the context of the refund suit that they would have been able to litigate in a Tax Court suit." Maj. Op. at 21. The tax code does not make a taxpayer's right to sue in Tax Court depend on whether the outcome could have been different, as the majority suggests. <u>Id.</u> at 21-22.

The majority attempts to support its new harmless error rule through misplaced reliance on <u>Elings v. Commissioner</u>, 324 F.3d 1110 (9th Cir. 2003), and <u>Smith v. Commissioner</u>, 275 F.3d 912 (10th Cir. 2001). These cases do not help the majority, because none involve the failure to give the taxpayer notice or follow the tax code's procedures. Maj. Op. at 20-21. In those cases, unlike here, the IRS followed the required procedure: it issued a notice of deficiency. <u>See</u> <u>Elings</u>, 324 F.3d at 1111; <u>Smith</u> 275 F.3d at 913-14. The only question was whether errors in those notices were harmless. The tax code expressly provides that errors in a notice of deficiency will generally <u>not</u> invalidate that notice. I.R.C. § 7522(a). Because of I.R.C. § 7522(a), <u>Elings</u> and <u>Smith</u> are quite different cases from one where the taxpayer received no notice, as occurred here. Whatever its faults, an error-filled notice still alerts the taxpayer that the IRS thinks he owes more taxes. No court has held, as the majority does here, that the IRS's failure to issue <u>any</u> notice is harmless error.

The majority also diverges from Supreme Court precedent by failing to strictly and narrowly construe the tax procedures that parties (including the IRS) must follow. The proper course is to tack as close to the plain language as common sense and precedent permit, not create a new harmless error "exception" to excuse the IRS's failings. See, e.g., Helvering v. Nw. Steel Rolling Mills, Inc. 311 U.S. 46, 49 (1940); Deputy v. Du Pont, 308 U.S. 488, 493 (1940). The provisions at issue are characteristically narrow; they do not create a harmless error exception for when the IRS exceeds its authority and fails to follow the tax code's deficiency procedures. See I.R.C. §§ 6211-6216. As in Botany Worsted Mills v. United States, 278 U.S. 282, 288-89 (1929), here Congress has prescribed the "exclusive method" by which the IRS can assess and collect deficiencies, I.R.C. §§ 6211-6216. See O'Bryant v. United States, 49 F.3d 340, 346-47 (7th Cir. 1995) ("Congress gave the IRS specifically delineated collection authority, and the IRS must act within that authority."). Part of this prescription is the degree of formality required—the statute requires the IRS to issue a notice of deficiency; it is not enough that the ultimate assessment turns out to be right in the absolute sense.[10] Id.; cf. Botany Worsted, 278 U.S. at 289; Raleigh & Gaston R.R. Co. v. Reid, 13 Wall. 269, 270 (1871) ("When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode.").

The majority is simply wrong to equate a taxpayer's right to a refund suit or a collection due process hearing ("CDP hearing") with a taxpayer's pre-payment, pre-assessment right to challenge the alleged deficiency in Tax Court. Maj. Op. at 23.

---

[10] The majority's analogy to jury trials is thus inapposite; trials are not like tax collections, for which the tax code limits how the IRS may go about its business. See Maj. Op. at 21. No statute similarly prescribes how parties must resolve their disputes.

There are many differences between a CDP hearing and Tax Court, not the least of which is the timing and the existence of an assessment. A taxpayer only has a right to a CDP hearing <u>after</u> taxes have been assessed, the taxpayer has refused to pay, and the IRS has finally sought to collect the unpaid taxes by levying the taxpayer's property. I.R.C. §§ 6330, 6331(a). By then, the taxpayer's credit score has been affected and his property subject to liens. I.R.C. § 6322; <u>see</u> <u>United States v. Nat'l Bank of Commerce</u>, 472 U.S. 713, 719-20 (1985); <u>Bronson v. United States</u>, 46 F.3d 1573, 1577 n.10 (Fed. Cir. 1995); <u>In re DeAngelis</u>, 373 F.2d 755, 757 (3d Cir. 1967). While it is true that a CDP hearing provides the taxpayer an opportunity to dispute the "underlying tax liability" if he "did not receive any statutory notice of deficiency for such tax liability or otherwise did not have an opportunity to dispute any such tax liability," the legislative history of CDP hearings suggests Congress wanted to provide "<u>greater</u> due process to taxpayers who are trying to comply with our complex tax laws," not a substitute for notices of deficiency. 144 Cong. Rec. S4147, 4182 (1998) (emphasis added). Tellingly, even the Tax Court does not consider CDP hearings a substitute for the IRS following the tax code's deficiency procedures. <u>See</u> <u>Freije v. Comm'r</u>, 125 T.C. 14, 36-37 (2005); <u>see also</u> I.R.C. § 6330. This is not surprising, given that CDP hearings are the eleventh-hour option for opposing collection. Similarly, the majority is wrong to equate a taxpayer's right to file a refund suit with the right to file in Tax Court, before paying anything. Maj. Op. at 21-22, 24. As the name suggests, <u>refund</u> suits can only be filed <u>after</u> the taxpayer has paid the amount of taxes the IRS says he owes.

Not surprisingly, the majority's view also conflicts with the views of other courts. Other courts that have considered the issue do not agree that a CDP hearing or refund

suit substitutes for the opportunity to bring a pre-payment suit in Tax Court. See, e.g., Phila. & Reading Corp. v. Beck, 676 F.2d 1159, 1163-64 (7th Cir. 1982); Hoyle, 131 T.C. 13, 2008 WL 5156596, at *6 ("[T]his Court has held that 'petitioner's opportunity in a section 6330 proceeding [CDP hearing] to dispute the underlying tax liability does not cure an assessment made in derogation of his right under section 6213(a) to a deficiency proceeding.'" (emphasis added)).

For these reasons, I cannot agree that the IRS's failure to issue a notice of deficiency, when such a notice is required, is harmless error.

## IV. CONCLUSION

In holding that "computational adjustment" in I.R.C. §§ 6230 and 6231 is limited to situations where there is a change in a partnership item, the majority reaches a conclusion at odds with the statute, our precedent, and common sense. It compounds this error by creating a sweeping harmless error exception, to the detriment of the taxpayer and at odds with every circuit to consider the issue.

For these reasons, I respectfully concur only in the result.